**In re FAS MART CONVENIENCE STORES, INC., et al., Debtors.**

No. 01–60386.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Aug. 8, 2001.

Douglas M. Foley, McGuire Woods LLP, Norfolk, VA, Counsel for Official Committee of Unsecured Creditors.

Brent C. Strickland, Paul M. Nussbaum, Whiteford, Taylor & Preston, Baltimore, MD, Counsel for Official Committee of Unsecured Creditors.

B. Amon James, Office of the U.S. Trustee, Richmond, VA, Acting Assistant U.S. Trustee.

Valerie Morrison, Raymond Pring, Gold, Morrison & Laughlin, McLean, VA, Counsel for Merchants Express Money Order Company and MEMO Money Order Company.

Lynn Tavenner, LeClair Ryan, Richmond, VA, Counsel for Debtors.

## AMENDED MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

An expedited hearing was held on June 25, 2001, on the Official Committee of Unsecured Creditors' (Committee) motion to strike the appointment of Merchants Express Money Order Company (MEMO) to the Committee. At conclusion of the hearing, the court granted the Committee's motion to strike.

These findings of fact and conclusions of law are entered pursuant to Federal Rule of Bankruptcy Procedures 7052 and supplement the court's bench ruling of June 25, 2001. A separate order consistent with this opinion will be entered.

### Findings of Fact and Procedural History.

Debtors filed their voluntary petitions for relief under chapter 11 on March 9, 2001. On the petition date, debtors' filed a list of creditors holding the twenty largest unsecured claims.

On March 16, 2001, the acting assistant U.S. trustee for the Richmond division appointed the following unsecured creditors to the Committee:

| Name of Creditor | Amount of Claim Listed by Debtors |
|---|---|
| The Beale Company of Virginia, Inc. | $3,931,500.00 |
| Bank of America | $2,715,000.00 |
| Citgo Petroleum Corporation | $1,676,600.00 |
| The Proctor and Gamble Distributing Co. | $ 627,100.30 |
| Pepsi Bottling Group, LLC | $ 482,773.94 |
| Coca–Cola Enterprises, Inc., t/a Mid–Atlantic Coca–Cola Bottling Company | $ 481,152.87 |
| Cloverland/Green Spring Dairy | $ 180,988.90 |

At hearing, the trustee stated that MEMO was not included in the initial appointment because MEMO missed the deadline for returning the creditor response form to serve on the Committee. MEMO later filed a creditor response form that lists the nature of its claims as "trust fund money owed for money order sales and damages."

In May 2001, Bank of America resigned from the Committee. The remaining six members of the Committee adequately represent the unsecured creditor body, and the Committee has been actively fulfilling its duties in these bankruptcy cases notwithstanding the resignation of Bank of America.

On June 11, 2001, the trustee appointed MEMO to the Committee. The trustee did not consult the Committee or its counsel prior to appointing MEMO.

On June 12, 2001, the Committee conducted a telephonic meeting to discuss the appointment of MEMO to the Committee and unanimously decided to authorize counsel for the Committee to file the motion to strike if necessary. On that same date, counsel for the Committee requested the trustee to reconsider MEMO's appointment.

On about June 20, 2001, the trustee advised counsel that he would not reconsider MEMO's appointment.

Counsel for the Committee filed a motion to strike MEMO from the Committee on June 21, 2001.

MEMO is currently a plaintiff in Adversary Proceeding No. 01–6010 against debtors, demanding, among other things, the immediate return of approximately four million dollars that MEMO asserts to be "trust funds" that do not belong to debtors' estate. The Committee also has intervened in the trust fund litigation and has been participating as a party defendant since April 18, 2001, in support of debtors and opposed to MEMO. Furthermore, the vice-chairman of the Committee has been designated by debtors as a witness to testify against MEMO, and MEMO has deposed the vice-chairman of the Committee in this regard.

The adversary proceeding has been contentious to date. MEMO filed a motion for temporary restraining order against debtor. That motion was denied and MEMO was granted a security interest in and lien against all cash proceeds resulting from debtors' postpetition sale of money orders.

As the litigation progressed, discovery disputes arose. MEMO filed an objection to debtors' discovery requests, which was overruled. MEMO filed a motion to quash notice of deposition, which was denied. MEMO filed a motion to compel responses to discovery requests, which settled.

MEMO filed another motion to quash notice of depositions and subpoenas, which was granted. Finally, MEMO filed an emergency motion for protective order and motion to expedite hearing for protective order. An expedited hearing was held, and MEMO's motion for protective order was denied.

Due to the delays associated with the discovery disputes, debtors and the Committee filed a motion for continuance of trial, and MEMO opposed it. The motion was granted, and trial is currently set in September 2001.

In addition to the trust fund litigation, MEMO has aggressively asserted its position in the underlying bankruptcy case and is directly adverse to the Committee with respect to several motions. MEMO objected to the employment of debtors' counsel, and that objection was eventually resolved. On March 19, 2001, MEMO filed a motion to vacate all of the first day orders. On April 6, 2001, MEMO filed an emergency motion to prohibit use of cash collateral or alternatively to reconsider denial of temporary restraining order (that was denied in the adversary proceeding), an emergency motion for relief from stay and an emergency motion to shorten time to respond to discovery. Expedited hearings were requested, and denied, on all three of the emergency motions. The Committee filed a response in opposition to MEMO's motion to vacate all first day orders and emergency motion for order prohibiting use of cash collateral. The Committee also filed an objection to MEMO's emergency motion for relief from stay. All of these matters have been consolidated and continued to the trial date.

Furthermore, the Committee filed a motion to shorten time for filing responses to discovery, which was granted, and MEMO filed a motion to vacate the order granting the Committee's motion. The Committee

filed a motion to approve and authorize retainer for Committee professionals, and MEMO objected. The Committee supported debtors' motion to approve interim key employee retention program, and MEMO objected. Finally, the Committee supported debtors' motion to extend exclusive periods for filing a plan of reorganization and soliciting acceptances, and MEMO objected.

MEMO's position in the trust fund litigation, contested matters and other actions proposed by debtors with Committee support, constitutes more than a mere disagreement over strategic objectives with the Committee. MEMO has consistently asserted and aggressively advanced its status not as an unsecured creditor, but rather as a secured creditor entitled to the immediate turnover of approximately four million dollars in "trust funds."

If MEMO wins the trust fund litigation, it would have a substantial negative impact on the prospects of any distribution to unsecured creditors in these bankruptcy cases. Moreover, the presence of MEMO on the Committee has a substantial chilling effect upon the level of communication between debtors and the Committee due to the pervasiveness and contentiousness of the MEMO litigation to date.

### Conclusions of Law.

I. *Authority to Review Committee Decisions and Applicable Standard of Review.*

Pursuant to § 1102 of the Bankruptcy Code, the United States trustee shall appoint a committee of creditors holding unsecured claims. *See* 11 U.S.C. § 1102(a)(1). Ordinarily, the committee consists of those entities, willing to serve, that hold the seven largest unsecured prepetition claims against the estate. *See* 11 U.S.C. § 1102(b)(1).

Prior to 1986, § 1102(c) authorized the court to alter or modify the composition of a committee. *See* 11 U.S.C. § 1102(c) (repealed 1986). The Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 transferred this authority to the U.S. trustee, and § 1102(c) was repealed. As a result, courts are divided as to the extent to which the court may alter or modify a committee and review decisions made by the U.S. trustee.

Some courts have held that they are without the authority to review committee decisions made by the U.S. trustee because § 1102 no longer expressly provides them the authority to do so. *See, e.g., In re Dow Corning Corp.*, 212 B.R. 258, 264 (E.D.Mich.1997) (finding that § 1102 "does not empower the bankruptcy court to appoint or remove the members of the committee"); *Smith v. Wheeler Tech., Inc. (In re Wheeler Tech., Inc.)*, 139 B.R. 235, 239 (9th Cir. BAP 1992) (stating that "[t]he power to appoint and delete members of the Creditors' Committee now resides exclusively with the U.S. Trustee"); *In re Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209, 210 (Bankr.S.D.N.Y.1990) (highlighting "the absence of any indication in the statute that the court may add to or delete an unsecured creditor from a committee").

Other courts have held that the courts retain the authority to review committee decisions. But even these courts do not agree on what level of deference to give the trustee's decisions. One line of cases holds that no deference be given to the trustee, and the trustee's decisions are reviewed de novo. *See In re Sharon Steel Corp.*, 100 B.R. 767, 776 (Bankr.W.D.Pa. 1989) (holding that "the reconstitution of an existing official committee[ ] is subject to de novo review by the Bankruptcy Court in order to determine the adequacy of the representation"); *In re Texaco Inc.*, 79 B.R. 560, 566 (Bankr.S.D.N.Y.1987) (stating that the issue of adequate representation is entrusted to the courts and determined on a de novo basis).

Another line of cases grants some deference to the trustee. These courts apply an arbitrary and capricious standard or an abuse of discretion standard. *See In re America West Airlines*, 142 B.R. 901 (Bankr.D.Ariz.1992) (stating that trustee's decision to remove a committee member will be overturned only if trustee acted arbitrarily and capriciously); *In re Columbia Gas System, Inc.*, 133 B.R. 174 (Bankr. D.Del.1991) (reviewing trustee's refusal to appoint a creditor to the committee under an abuse of discretion standard).

Since § 1102(c) was repealed, courts often rely on their inherent powers under 11 U.S.C. § 105(a) to review the trustee's committee decisions. *See Bodenstein v. Lentz (In re Mercury Finance Co.)*, 240 B.R. 270, 277 (N.D.Ill.1999).

■ This court adopts the view that it has the inherent equitable power under § 105(a) to review the trustee's committee decisions under an abuse of discretion standard. *See id.; In re Pierce*, 237 B.R. 748 (Bankr.E.D.Cal.1999); *In re Barney's, Inc.*, 197 B.R. 431 (Bankr.S.D.N.Y.1996); *In re Columbia Gas System, Inc.*, 133 B.R. at 174; *In re First RepublicBank Corp.*, 95 B.R. 58 (Bankr.N.D.Tex.1988); COLLIER ON BANKRUPTCY, ¶ 1102.07[2] (Lawrence P. King, ed., 15th ed. rev.1998).

■ This does not mean the court may substitute its own judgment for that of the trustee. Rather, the abuse of discretion standard essentially means that the decision of the trustee will not be disturbed unless it is shown that the trustee "acted in an irrational, arbitrary, or capricious manner, clearly contrary to reason and not justified by the evidence." *In re Pierce*,

237 B.R. at 754 (internal quotations and citations omitted); *see also* BLACK'S LAW DICTIONARY 10 (7th ed.1999) (defining abuse of discretion as "[a]n adjudicator's failure to exercise sound, reasonable, and legal decision-making"). Put simply, a trustee abuses his discretion when he acts arbitrarily and capriciously.

## II. *Fiduciary Duty and Conflict of Interest*

An unsecured creditors committee performs many vital duties in a complex chapter 11 case such as this. It oversees the administration of the case, investigates assets and liabilities, and hires professionals to determine whether a debtor should continue its business operations.

■ Members of the committee also have another duty—a fiduciary duty to all creditors represented by the committee. *See In re Pierce*, 237 B.R. at 758; *In re First RepublicBank Corp.*, 95 B.R. at 61. Among these duties are fiduciary duties of undivided loyalty and impartial service to all creditors represented by the committee. *See In re Pierce*, 237 B.R. at 758 (citing *In re County of Orange*, 179 B.R. 195, 202–03 (Bankr.C.D.Cal.1995)). While these duties are owed to all creditors represented by the committee, they are not owed to debtor. *See In re Barney's, Inc.*, 197 B.R. at 441–42.

■ If a creditor serving on the committee has an impermissible conflict of interest, it may give rise to a breach of fiduciary duty. Moreover, if a party is unwilling or unable, due to overwhelming conflicts of interest or any other reason, to exercise and honor its fiduciary obligations, it should not be allowed to serve on the committee, and the trustee should take steps to remove that member. *See In re Pierce*, 237 B.R. at 758; *see also Johns–Manville Corp. v. Doan (In re Johns–Manville Corp.)*, 26 B.R. 919, 925 (Bankr.

S.D.N.Y.1983) (stating that "the individuals constituting a committee should be honest, loyal, trustworthy and without conflicting interests."); *In re Swolsky*, 55 B.R. 144 (Bankr.N.D.Ohio 1985) (holding that a creditor who was an insider was removed because that creditor would have a chilling effect on the other committee members); COLLIER's at ¶ 1102.05[3]. If a trustee appoints a party with such serious conflicts to the committee and fails to remove the party when the situation comes to light, the trustee's decision constitutes an abuse of discretion. *See In re Barney's, Inc.*, 197 B.R. at 442 (quoting *In re First RepublicBank Corp.*, 95 B.R. at 61).

■ Committee members often have varying interests in a bankruptcy case and often disagree over the committee's strategic objectives. Conflicting viewpoints also are common when committee members act to protect their individual interests. Membership on a committee does not preclude members from pursuing their own interests so long as this can be done without running afoul of their fiduciary duties to all unsecured creditors. Thus, disagreements over strategic objectives or other insignificant and discreet conflicts do not, by themselves, warrant removal of a committee member.

■ However, if there is specific evidence that a committee member has breached or is likely to breach its fiduciary duty to creditors represented by the committee or the member has an impermissible conflict with the others then removal may be warranted. *See In re Microboard Processing, Inc.*, 95 B.R. 283 (Bankr. D.Conn.1989).

■ Here, the conflicts between MEMO and other members of the Committee are so extraordinary that the other members unanimously agreed to seek MEMO's removal from the Committee.

They believe that if MEMO is successful in the trust fund litigation it would have a substantial negative impact on the prospects of a distribution to unsecured creditors in these bankruptcy cases. For this reason, the Committee filed a motion to intervene in the trust fund litigation and is now a party-defendant against MEMO.

As the court has noted in detail above, MEMO's litigation against debtors and its opposition to the Committee's position in the case goes far beyond disagreement over the strategic objectives of the Committee. In fact, MEMO's aggressive efforts to establish its secured status could seriously undermine the Committee's efforts on behalf of the other unsecured creditors. Thus, MEMO has a conflict of interest with the Committee that is pervasive, and MEMO cannot honor its fiduciary duty to all unsecured creditors so long as it is prosecuting the litigation against debtors and the Committee.

### III. *Conclusion*

Accordingly, as a result of MEMO's overwhelming conflict of interest, the court finds the trustee's decision to appoint MEMO to the Committee and his subsequent failure to remove MEMO constitutes an abuse of discretion. Accordingly, the motion to strike will be granted, effective June 25, 2001. MEMO will be suspended from serving on the Committee until such time as the trust fund litigation is resolved. At that time, the court will, if appropriate, consider MEMO's request to be returned to the Committee.

An order has been entered.