**In re COMPUTER LEARNING CENTERS, INC., Debtor.**

**No. 01–80096–RGM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Jan. 7, 2003.

Ron Guberman, Media Reactions, Inc., Reston, Reston, VA, Chairman, Unofficial Unsecured Creditors' Committee.

Donald F. King, Odin, Feldman & Pittleman, Fairfax, VA, Chapter 7 Trustee.

## MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

THIS CASE is before the court on the motion of Ron Guberman, chairman of the Unofficial Unsecured Creditors' Committee, requesting that this court order the United States Trustee to schedule a supplemental meeting of creditors so that an election for a chapter 7 trustee may be held. (Docket Entry 890). The court concludes that the United States Trustee did not abuse his discretion in declining to schedule the meeting.

Computer Learning Centers, Inc., filed a voluntary petition in bankruptcy pursuant to chapter 7 of the United States Bankruptcy Code in this court on January 25, 2001. H. Jason Gold was appointed the chapter 7 trustee. He resigned as trustee on July 1, 2002, effective July 15, 2002. (Docket Entry 754). He mailed a copy of his resignation to numerous parties including Mr. Guberman. The clerk mailed a notice of the resignation and the appointment of Donald F. King as successor interim trustee to all creditors and parties in interest on July 27, 2002.[1] (Docket Entry 812). The notice advised creditors that unless a request for an election of a trustee was filed within ten days after the notice, Mr. King would become the permanent trustee. Mr. Guberman as chairman of the Unofficial Unsecured Creditors' Committee filed this motion re-

---

1. The certificate of service was 151 pages long. Media Reactions, Inc., was listed on the certificate of service. Media Reactions, Inc., is Mr. Guberman's employer, and is a creditor. Mr. Guberman, individually, is not a creditor. The notice was mailed to Media Reactions' attorney, Leslie W. Lickstein. Mr. Lickstein filed a proof of claim on behalf of Media Reactions, Inc., and in that proof of claim requested that notices be mailed to him.

questing an election on October 23, 2002.[2]

Section 702 permits creditors to elect a trustee. The election is held at a meeting of creditors scheduled and held under § 341 of the Bankruptcy Code. The election must be requested by creditors that hold at least 20 percent in amount of claims. Bankruptcy Code, § 702(b). A candidate for trustee is elected if creditors holding at least 20 percent in amount of claims eligible to vote, in fact, vote in the election. Bankruptcy Code, § 702(c)(1). If there is a valid election, the candidate receiving the vote of the majority in amount of claims is elected trustee. Bankruptcy Code, § 702(c)(2). If a trustee is not elected, the interim trustee becomes the permanent trustee. Bankruptcy Code, § 702(d).

 Mr. Guberman initially appears to argue that the United States Trustee must schedule a supplemental meeting of creditors in every case where the trustee resigns. The creditors would then have the opportunity to elect a successor trustee. In fact, there is no such requirement in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. The United States Trustee is the party responsible for convening and presiding at meetings of creditors. Bankruptcy Code, § 341(a).[3] The United States Trustee is not required to convene a supplemental § 341 meeting unless some purpose will be served. Trustee's are rarely elected at the first meeting of creditors and even less frequently when an appointed—rather than an elected—trustee resigns. In fact, so few creditors actually attend any meeting of creditors that a voting quorum is almost never present. In recognition of this, the United States Trustee routinely appoints a successor trustee without an additional meeting of creditors. It would be inordinately wasteful of creditors' resources and the court's resources to require an additional meeting of creditors in every case where a trustee resigns. Almost all would be futile acts. This does not mean that the United States Trustee may ignore the possibility of such an election. But, unless the United States Trustee abuses his discretion, the court will not intervene and require him to convene such a meeting. *See In re Fas Mart Convenience Stores, Inc.,* 265 B.R. 427, 431 (Bankr.E.D.Va.2001) (holding that court has inherent equitable power under § 105(a) to review United States Trustee's committee decisions under abuse of discretion standard).

 Mr. Guberman's argument may be interpreted to require the United States Trustee to convene a meeting if any creditor requests a meeting. This, however, could too easily override the United States Trustee's discretion in these matters. Unless there is a meaningful likelihood that a voting quorum will be present, the United States Trustee is not required to convene a supplemental meeting of creditors for the purpose of electing a successor trustee. In this case, the United States Trustee could properly have concluded that there was no likelihood that a voting quorum would be present.

At most only one creditor, Media Reactions, Inc., Mr. Guberman's employer, requested an election. It filed a proof of claim for $368,560.55. (Proof of Claim No. 818).[4] The total claims filed in this case

---

2. It is unclear whether he was authorized to act on behalf of the committee or was acting on his own volition.

3. The court does not convene the meetings and is precluded from presiding at or attending any such meeting. Bankruptcy Code, § 341(c).

4. Mr. King filed a complaint against Media Reactions on November 18, 2002, seeking recovery of an alleged $439,123.85 preferential

exceed $150,000,000. The single largest claim is that of the Department of Education which is at least $110,000,000. The Department of Education's unsecured claim may constitute anywhere from 75 to 90 percent of the total amount of unsecured claims.

It is undisputed that at least 20 percent in amount of the creditor body has not requested an election of a trustee. In order for this quorum to be met, Mr. Guberman would need substantial and pervasive support among the creditor body or would need the Department of Education to join in his request.[5] More than three months passed between the date of the clerk's notice and the hearing on the motion. This was sufficient time for Mr. Guberman to garner support for his motion. As of November 12, 2002, however, no other creditor had come forth and requested an election. Nor was there any showing that any other creditor was likely to come forward. Given the dynamics of the case and the reasons Mr. Guberman gave for his desire for an election, it is not likely that a quorum would be forthcoming at a supplemental creditor's hearing.

Mr. Guberman's reason concerns the claim of the Department of Education. He expressed dissatisfaction with Mr. Gold's resolution of the Department of Education's claim.[6] If the Department of Education's claim can be successfully defeated or minimized, the distribution to all other nonpriority unsecured creditors could be materially increased. Mr. King would give no assurance that he would attack the Department of Education's claim. He properly stated that he would take such action as may be appropriate. Mr. Guberman is also concerned that Mr. King's law firm is not of sufficient size to

transfer. While this was only one of numerous preference actions recently commenced, it raises the question of whether Media Reactions has "an interest materially adverse" to the other creditors. Bankruptcy Code § 702(a)(2).

5. While the record has not been fully developed, it may be that the Department of Education holds more than 80% of the claims entitled to vote. Only unsecured, nonpriority allowed claims may vote. Bankruptcy Code § 702(a)(1). Many claimants are former students and employees who hold priority claims and are not eligible to vote.

6. This case was commenced on January 25, 2001. The trustee sought to immediately sell the schools operated by the debtor as going concerns. However, under Department of Education regulations, any purchaser would be debarred from participating in any student loan program at those schools for two years after the purchase. Because of the importance of student loans in the operation of these schools, this regulation effectively precluded the sales as going concerns. The trustee reached an agreement with the Department of Education. On March 2, 2001, he filed a motion seeking approval of the settlement. (Docket Entry 88). The settlement was approved on March 7, 2001. (Docket Entry 103). In essence, the settlement allowed the Department of Education's claim in the minimum amount of $110,000,000 and removed the disqualification of prospective purchasers of the schools from participating in student loan programs. The Department of Education estimated Computer Learning Center's obligation to it at $187,497,434 at the time of settlement. Its proof of claim asserts a liability of $258,919,438, but requests payment of only $110,000,000. (Proof of Claim 2780). The claim was filed on July 13, 2001. No amendment has been filed to date. The bar date for governmental units to file a proof of claim was July 24, 2001. (Docket Entry 313). As a result of the sale of the schools as going concerns, the trustee realized $20,000,000. Without this concession, the trustee did not believe that he would realize anything close to that amount. There were other terms in the settlement agreement. The Department of Education may amend its proof of claim to an amount in excess of $110,000,000 and the trustee may object to any claim in excess of $110,000,000. The first $500,000 to be paid to the Department of Education was carved out for payment to creditors.

litigate a significant case with the Department of Education despite the fact that the prior trustee hired numerous special counsel from law firms much larger than his own, something Mr. King could, subject to the court's approval, also do.[7] A creditor's motive in seeking election of a trustee is, of course, not relevant as to whether an election must be held. It does, however, add to the understanding of the dynamics of such an election.

In these circumstances, the United States Trustee did not abuse his discretion in declining to schedule a supplemental meeting of creditors for the purpose of holding an election. Holding such a meeting would have entailed substantial expense without any reasonable likelihood of an election taking place.

■ The only significant question raised is the amount of time given in the notice issued by the clerk on July 27, 2002, to request an election. It provided that parties were required to request an election within ten days of the date of the notice; otherwise, the interim trustee would become the permanent trustee. Bankruptcy Code, § 702(d). The period was selected in consultation with the United States Trustee who is responsible for convening meetings of creditors. There is no time period set forth in the Bankruptcy Rules within which creditors must request an election of a successor trustee. However, it is clear that there must be some limitation so that the administration of the estate is not left in an unsettled state.[8] It should be a reasonable period of time under the circumstances of the case. This is a significant chapter 7 liquidation proceeding. The creditors did not elect the initial trustee at the first meeting of creditors. There was concern of delays that may be occasioned from the change in trustees. Mr. Guberman expressed these concerns at the July 9, 2002, hearing. The estate has millions of dollars on hand that should be promptly disbursed to creditors. The pension and employee benefit plans were within several months of being terminated and needed attention. Mr. Gold had retained an accounting firm to identify potential preferential transfers. The report was about to be completed and needed attention. The deadline for filing preference complaints is January 25, 2003. Bankruptcy Code, § 546. While that may have seemed somewhat remote in July, 2002, it really was not. The trustee must review the potential preference claims to determine those that merit action. Trustees then typically seek to resolve the preference claims consensually prior to filing complaints to avoid them. This generally maximizes recoveries while minimizing expenses. The trustee must then file complaints for the unresolved claims. In a case such as this, there may be a significant number of adversary proceedings commenced. Five months to complete the process of filing numerous complaints is, in fact, not a great deal of time.

In light of these and other factors that the United States Trustee may have considered, it is clear that there was a need for promptness in selecting the permanent trustee so that the continuity and momentum of the administration of the estate could be maintained without significant

---

7. Mr. Guberman's proposed nominee is a member of a large Washington law firm. A trustee does not have an automatic right to retain his own firm as counsel.

8. While an interim trustee has all of the powers of a permanent trustee, an interim trustee may be inclined to defer all but caretaker-type decisions until a permanent trustee is appointed so as not to commit the permanent trustee to a course of action the permanent trustee might not have taken.

disruption. The ten-day period given in this case was not an abuse of the United States Trustee's discretion in making the appointment of the interim trustee permanent. This is further confirmed by the fact that during the three-month period from the date of the clerk's notice to the filing of the motion, there was a total absence of any other creditor requesting an election of a trustee. The court finds that the period was adequate and that no party has been prejudiced by the brevity of the 10–day request period.

Mr. Guberman argues that the notice period should have been no less than 20 days, a period that tracks the notice required for a meeting of creditors. F.R.Bankr.P.2002(a)(1). While this is a sensible approach, it misses the distinction between the actual meeting of creditors and the decision to hold a meeting of creditors. Rule 2001(a)(1) concerns notice of the meeting of creditors itself, not with the time within which creditors must make known their desire to elect a successor trustee. A longer period is appropriate for a meeting of creditors because many creditors may need to make travel or other arrangements to actually attend the meeting. However, it is a much simpler process to make known a desire to elect a successor trustee. This can be accomplished by letter or other communication with the United States Trustee.

■ Mr. Guberman also complains that he did not receive the July 27, 2002, clerk's notice. The failure to mail the clerk's notice to Mr. Guberman personally is not fatal. It was mailed to Mr. Lickstein, Media Reaction's attorney, and not to him as chair of the Unofficial Unsecured Creditor's Committee.[9] It was also mailed to the other ten members of the Unofficial Unsecured Creditors' Committee. Each is listed on the certificate of service. In order for the request for an election to be the act of the committee, the committee must have authorized it. Here, ten of the 11 committee members received the notice directly while Mr. Guberman received it through counsel. No prejudice to the committee has been shown by this notice procedure and Media Reactions as a creditor received proper notice.

Even without actual notice of the ten-day period to request an election, Mr. Guberman's request was not timely. Mr. Guberman was aware of the creditors' right to elect a successor chapter 7 trustee from at least July 9, 2002. Mr. Gold was a member of Gold, Morrison & Laughlin, P.C. His seven-attorney law firm merged into Wiley, Rein & Fielding, LLP, on April

---

9. While not raised by the parties, the court notes that there is an ambiguity as to the Committee's status. Unlike § 1102 which permits the United States Trustee to appoint a creditors committee, § 705 requires the election of a committee. The United States Trustee's "Report of Election of Creditors Committee" suggests that the committee was appointed by the United States Trustee, not elected by the creditors. (Docket Entry 122). The Committee unsuccessfully sought to employ counsel. In the application, the prospective counsel recited that the Committee had been appointed by the United States Trustee. Application to Employ, ¶ 3. (Docket Entry 243). The membership of the Committee also raises a question. Under § 705, the Committee may consist of up to eleven members who hold allowable unsecured claims of a kind entitled to distribution under § 726(a)(2). These are unsecured nonpriority claims. Four members of the Committee are former students. Most of the student claims are priority claims under § 507(a)(6). Four members of the Committee are former employees most of whose claims are priority claims under § 507(a)(3) and (a)(4). Both are entitled to distribution under § 726(a)(1), not § 726(a)(2). The United States Trustee may have intended to appoint an unofficial advisory committee to assist the numerous creditors, particularly former students and former employees. Such a committee is not vested with any of the powers of a committee elected under § 705.

29, 2002. On May 13, 2002, Mr. Gold, as trustee, sought to substitute Wiley, Rein & Fielding, LLP, as counsel for the trustee. The court was unable to grant that motion on the initial application filed because of potential conflicts of interest identified in the application. It stated its reason in an order dated June 25, 2002, (Docket Entry 741) after the trustee had filed his Second Supplemental Verified Declaration on June 20, 2002, (Docket Entry 731) further addressing the potential conflicts. That order was mailed to Mr. Guberman at his office address. The order discussed Mr. Gold's comment in his Second Supplemental Verified Declaration that raised the idea that conflicts arising from the merger of the law firms could be resolved, as to the trustee, by the appointment of a "limited special purpose co-trustee." Second Supplemental Verified Declaration at ¶ 5. The court, without ruling on the suggestion, discussed §§ 701, 702, and 703 of the Bankruptcy Code and the requirement for the appointment of "one disinterested person" as trustee. In the process of discussing this matter, the court noted § 702(b) and quoted that portion of § 702(b) which states "creditors may elect one person to serve as trustee in the case." The purpose of the discussion was to draw the trustee's attention to the phrase "one person" so that in a further supplement to his application he would be prepared to discuss his proposal of a special purpose co-trustee in light of the apparent requirement of a single trustee. This relates to the present motion because Mr. Guberman stated at the July 9, 2002, hearing that he was familiar with the court's order of June 25, 2002, and, in fact, had read it that morning. While the hearing did not concern the election of a successor trustee, he noted the reference to § 702(b) and the ability of the creditors to elect a trustee. He asked the court, "[D]o we still have that option available to us? Do we actually get a vote [at] this late date?" The court responded, "I don't know." Transcript 7/9/2002 at 63. The hearing also included comments by Frank Bove, an attorney at the Office of the United States Trustee, who advised the court that the United States Trustee was considering appointing Donald F. King as trustee and that Mr. King was performing an extensive conflicts check to determine whether he could accept the appointment. Consequently, as of July 9, 2002, Mr. Guberman was aware of § 702(b) which permits the election of a trustee and a successor trustee, and knew that there was an unresolved question as to the timeliness of requesting an election, that the United States Trustee was actively considering appointing Mr. King, and that Mr. Gold's resignation was effective July 15, 2002. Mr. Guberman spoke with Mr. Bove at the United States Trustee's Office about the appointment of a successor trustee and expressed interest in electing a successor trustee. He met with Mr. King on August 16, 2002, and met with an attorney, Jeffrey L. Tarkenton, on September 19, 2002. Mr. Tarkenton ultimately argued Mr. Guberman's motion on November 11, 2002.[10] In light of Mr. Guberman's knowledge, his request was not timely.

### CONCLUSION

In light of the circumstances presented, the court will deny the motion to require the United States Trustee to convene a § 341 meeting.

---

**10.** Mr. Guberman's potential nominee for trustee is a member of Mr. Tarkenton's law firm.