**In re VENTURELINK HOLDINGS, INC., et al., Debtors.**

No. 02–80906–SAF–11.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Sept. 2, 2003.

Gerrit M. Pronske, Kirkpatrick and Lockhart, L.L.P., Dallas, TX, for Debtors.

Molly Bartholow, Bartholow and Bartholow, Dallas, TX, for Larry Horner.

John K. Cunningham, White & Case, Miami, FL, for Unsecured Creditors Committee.

George McElreath, Office of the U.S. Trustee, Dallas, TX, for United States Trustee.

### MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Chief Judge.

On July 3, 2003, Venturelink Holdings, Inc., et al., the debtors, filed a motion to remove Larry Horner as a member of the Official Committee of Unsecured Creditors. On July 25, 2003, Horner filed a response, opposing his removal from the committee. The court held a hearing on the motion on July 31, 2003.

The determination of the composition of an official creditors committee raises a core matter over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(1) and (b)(2)(A) and 1334. This memorandum opinion contains the court's findings of fact and conclusions of law required by Bankruptcy Rules 7052 and 9014.

On December 2, 2002, Venturelink and the other debtors, including Pacific USA Holdings Corp. ("PUSA"), filed their petitions for relief under Chapter 11 of the Bankruptcy Code. PUSA is the direct or indirect parent corporation of the other debtors. Five months later, on May 22, 2003, the United States Trustee appointed a five-member official unsecured creditors committee. The committee includes Horner. On May 27, 2003, the debtors requested that the United States Trustee remove Horner and other persons from the committee. Debtor's Mot., Ex. B. The

United States Trustee did not remove those committee members, but expanded the committee to eight members. The debtors then filed this motion to remove Horner.

Horner had been the chairman of the board of directors of PUSA. He had also served as a director or officer of several of the other debtors. Prior to Horner's role as chairman, Bill Bradley held the PUSA chairman position. Bradley and Horner filed a lawsuit styled *Bradley & Horner v. Pacific USA Holdings Corp., et al.*, case no. 01–11164, in the 116th Judicial District Court of Dallas County, Texas. In the state court lawsuit Bradley and Horner allege the following causes of action against PUSA: breach of contract, specific performance, and attorney's fees. Bradley and Horner also named PUSA's attorneys, Kirkpatrick & Lockhart, LLP, as defendants. They allege the following causes of action against the attorneys: negligence, gross negligence, breach of fiduciary duty, common law fraud, violation of the Texas Deceptive Trade Practices–Consumer Protection Act, and negligent misrepresentation. Horner's Resp., Ex. 4.

PUSA filed counterclaims against Horner in the state court lawsuit, including breach of fiduciary duty, misappropriation of PUSA assets, fraudulent misrepresentations, negligent misrepresentations, civil conspiracy and conversion. Debtor's Mot., Ex. B. The debtors assert that Horner breached his fiduciary duty to PUSA by causing PUSA to transfer $4,750,000 to Horner to build a home in Mexico, by using PUSA funds for personal business opportunities, and by causing PUSA to transfer $7,000,000 to Horner within two years of the bankruptcy filings. PUSA further alleges that Horner aided and abetted similar breaches of fiduciary duty by Bradley. PUSA seeks a money judgment of several million dollars from Horner. PUSA anticipates that a recovery from Horner will partially fund its Chapter 11 plan. PUSA contends that, as a result, Horner suffers from the type of conflict that compels his removal from the committee.

Horner responds that PUSA's claims lack merit. Horner introduced into evidence documents, which he contends, exonerates his actions. He further asserts that the debtors and their counsel knew and approved of the transfers. Horner argues that his employment contract entitled him to receive incentive compensation payments from PUSA. He argues that he has been released by PUSA for any claims of breach of fiduciary duty. Horner contests that he engaged in self-dealing. To the contrary, he asserts that under a separation agreement, PUSA owes him $3,000,000. Further, Horner attacks Kirkpatrick & Lockhart's role in the case.

Horner argues that committee members typically have conflicts with a debtor. He observes that debtors often assert counter claims against claims asserted by creditors, including committee members. To the extent that the committee must address the handling of Horner's claim and PUSA's counterclaim, Horner agrees that he would not participate in the committee decision or vote on the issue. Horner's Resp. at 21.

The United States Trustee likewise observes that it is not atypical for a committee member to be the target of a debtor lawsuit. A target of a lawsuit should not be a reason to remove a committee member.

### Analysis

 Under 11 U.S.C. § 1102(a)(1), the United States Trustee appoints a committee of unsecured creditors, as he deems appropriate. 11 U.S.C. § 1102(a)(1). The United States Trustee has administrative authority over committee members. *In re First RepublicBank Corp.*, 95 B.R. 58, 60

(Bankr.N.D.Tex.1988). Questions concerning committee membership, including removal of a committee member for a conflict of interest, must, in the first instance, be directed to the United States Trustee. *Id.* Under 11 U.S.C. § 105(a), this court may review the United States Trustee's decision on the question of the removal of a committee member to determine if the United States Trustee acted arbitrarily and capriciously. *Id.* The court does not substitute its judgment for that of the United States Trustee. *In re Fas Mart Convenience Stores, Inc.,* 265 B.R. 427, 431 (Bankr.E.D.Va.2001). To prevail, the debtors must establish that the United States Trustee acted arbitrarily and capriciously in refusing to remove Horner from the committee. *First RepublicBank,* 95 B.R. at 60.

■ The debtors assert that Horner holds a disqualifying conflict of interest. A committee member holding a conflict of interest cannot continue to serve. But the notion of a conflict of interest takes on a particular meaning in the context of removing committee members. Not all conflicts mandate removal. The Bankruptcy Code does not expressly prohibit a person from serving on a committee because of a lack of disinterestedness. Furthermore, a creditor disagreement over strategy or objectives on a committee does not amount to the type of conflict mandating removal. *First RepublicBank,* 95 B.R. at 61.

■ On the other hand, a committee member owes a fiduciary duty to all creditors represented by the committee. This court has held that a conflict of interest that amounts to a breach of that fiduciary duty constitutes the type of conflict that would mandate removal of the creditor from the committee. *Id.* The court adds that the appearance of a breach of that fiduciary duty should likewise mandate the removal. The bankruptcy process must both be fair and appear fair. *In re Allied Texas Invs., Inc.,* no. 389–30056–SAF–11, 1989 WL 265432, at *1 (Bankr.N.D.Tex. Oct.16, 1989). A creditor on a committee who exudes the appearance of a breach of fiduciary duty undermines that basic bankruptcy tenet, thereby corrupting the process. The United States Trustee would act arbitrarily and capriciously if he refused to remove a committee member who held a conflict of interest amounting to a breach of the fiduciary duty owed by the creditor to the creditors represented by the committee or who appeared to hold such a conflict.

■ PUSA's claims against Horner amount to more than a typical creditor-debtor dispute. PUSA's claims implicate fundamental principles of corporate governance, and directly challenge Horner's exercise of his fiduciary duties while chairman of PUSA's board of directors. Horner concedes that he received millions of dollars from the debtors within two years of the debtors' demise. Horner says he committed no breach of fiduciary duty, but, to the contrary, Horner asserts that PUSA owes him several million dollars more. Horner argues that PUSA and its corporate attorneys knew and approved of the transfers.

The court cannot determine the merits of the dispute on the instant motion. With the dispute unresolved, the bankruptcy estate, including the creditors committee, must address an allegation that Horner, the former chairman of the board, while in a fiduciary capacity, took several million dollars from PUSA in violation of his fiduciary duty. With Horner's exercise of his fiduciary duty at issue, Horner cannot or has the appearance that he cannot, in turn, act as a fiduciary to the very creditors who would be ultimately, albeit derivatively, harmed if the debtor is correct. Horner

cannot discharge his functions with the unresolved taint of that type of litigation.

Horner cannot or has the appearance that he cannot exercise his fiduciary duties to analyze assets of the bankruptcy estate for the creditors represented by the committee while under the allegation of breaching his fiduciary duty while chairman of the board of the debtor. The dispute is not merely a debtor-creditor dispute over amounts due for goods or services. The dispute is not merely a disagreement about the reorganization process. The dispute is not merely over strategy or objectives a committee should take in negotiations with the debtor or in resolving litigation. Rather, the dispute implicates Horner's fiduciary duty and thereby his ability to honor his fiduciary duty to all unsecured creditors or the appearance of his ability to honor his fiduciary duty to all unsecured creditors. *See Fas Mart Convenience Stores,* 265 B.R. at 433.

The court hastens to observe that it makes no assessment of the merits of the debtors' claims against Horner. Rather, the very nature of the claims compels the conclusion. The very nature of the claims creates the disqualifying conflict.

The court's analysis actually goes beyond PUSA's disputes with Horner. For precedential purposes, the court's analysis recognizes an endemic conflict. From New York City to Houston, federal courts are grappling with the fiduciary performance of officers and directors of failed companies. *See, e.g.,* Mitchell Pacelle, Enron Investors Question Roles of Big Banks, Wall St. J., Apr. 5, 2002, at C1 (citing SEC's opinion that public interest served by an independent fiduciary rather than creditor's committee lawyers to examine Enron's assets). In this climate, as a matter of public policy, a former officer or director of a debtor should not serve on a creditors committee. Necessarily, creditors committees will analyze the performance of former officers and directors. The officers and directors will have a natural tendency to steer the focus of the committee from their performance. Where officers and directors have received substantial sums of money within a state or federal law avoidance period, the officers and directors will have a natural tendency to attempt to retain the transfers and clear their names. In addition, the former officers and directors will be a source of information for the administration of the bankruptcy estate and the negotiation of a Chapter 11 plan. Creditors will normally adduce that information through the formal discovery of Bankruptcy Rule 2004. The inherent conflicts of this situation cannot be avoided by the officer or director abstaining from committee participation when issues pertaining to his performance or transfers to him emerge. Rather, the conflict, stemming from the officer and director's position as a fiduciary, implicate the fiduciary nature of the committee position. As a matter of public policy, the officer or director should not be a member of the committee.

Consequently, the court concludes that the United States Trustee acted arbitrarily and capriciously by refusing to remove Horner from the committee. Accordingly,

**IT IS ORDERED** that the motion to remove Larry Horner as a member of the Official Committee of Unsecured Creditors is **GRANTED.**

**IT IS FURTHER ORDERED** that Larry Horner is removed as a member of the committee, effective upon entry of this order.